**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

DEMOCRACY FORWARD FOUNDATION,
1333 H St. NW
11th Floor
Washington, DC 20005

        *Plaintiff*,

        vs.

UNITED STATES DEPARTMENT OF THE
INTERIOR
1849 C St. NW
Washington, DC 20240

        *Defendant.*

Case No.

## COMPLAINT FOR INJUNCTIVE RELIEF

1.      On December 28, 2017, the Department of Interior ("DOI" or "Defendant") issued a guidance document ("the Guidance") to DOI's Assistant Secretaries and Heads of Bureaus and Offices concerning a new process for approving discretionary grants and cooperative agreements by the agency.

2.      The Guidance required, among other things, that many DOI grants and cooperative agreements be reviewed first by the Senior Adviser to the Assistant Secretary for Policy, Management and Budget, a politically-appointed position currently filled by Steven Howke.

3.      Since the Guidance was issued, reporting indicates that it has affected many grantees by, *inter alia*, eliminating funding absent explanation.

4.      Under the Trump Administration, various agencies have centralized control of their respective grantmaking procedures in the hands of political appointees rather than career officials.  These political appointees have repeatedly exercised this responsibility in ways that are politicized, poorly-supported, and unlawful.

5.      Plaintiff seeks information that would illuminate for the public the process by which DOI's political appointees are involved in making grant decisions, and by which DOI grantees have been harmed or have benefitted by these appointees' involvement.  Defendant's failure to respond to Plaintiff's request violates the Freedom of Information Act ("FOIA") and deprives the public of the transparency to which it is entitled.  Accordingly, Plaintiff seeks injunctive relief compelling Defendant to immediately and fully comply with Plaintiff's requests under FOIA.

## JURISDICTION AND VENUE

6.      This Court has jurisdiction over this action pursuant to 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1331.

7.      Venue in this Court is proper under 5 U.S.C. § 552(a)(4)(B) and 28 U.S.C. § 1391(e).

## PARTIES

8.      Plaintiff Democracy Forward Foundation is a not-for-profit public interest organization incorporated under the laws of the District of Columbia and based in Washington, D.C. Plaintiff works to promote transparency and accountability in government, in part by educating the public on government actions and policies.

2

9.      Defendant DOI is a federal agency within the meaning of FOIA, *see* 5 U.S.C. §
552(f)(1), that is headquartered in Washington, D.C. Defendant has possession, custody, and
control of records to which Plaintiff seeks access.

## STATEMENT OF FACTS

### Politicization Of Grantmaking In The Trump Administration

10.     Since President Trump took office, his appointees and the agencies they lead have
created legal and political controversy by politicizing the federal government's grantmaking
processes.

11.      For example, in January 2017, the Department of Homeland Security ("DHS")
announced its grant awards under the Countering Violent Extremism program, one of which was
awarded to Life After Hate, a non-profit group that works to counter violent white nationalism
and other far-right extremism in the United States.[1]

12.     Five months later, the Trump Administration announced a revised list of grant
awards, revoking the award to Life After Hate.[2]  Life After Hate was the only awardee whose
mission focused exclusively on countering violent extremism in far-right and white nationalist
communities.

13.     It was publicly reported that a high-profile political appointee at DHS, Katharine
Gorka, was responsible for the revocation of the Life After Hate grant.[3]  Ms. Gorka had

---

[1] Press Release, DHS, Statement by Secretary Jeh Johnson Announcing First Round of DHS's Countering Violent Extremism Grants (Jan. 13, 2017), https://www.dhs.gov/news/2017/01/13/statement-secretary-jeh-johnson-announcing-first-round-dhss-countering-violent.
[2] *DHS Countering Violent Extremism Grants*, DHS (June 23, 2017), https://www.dhs.gov/cvegrants.
[3] Jessica Schulberg, *Controversial Trump Aide Katharine Gorka Helped End Funding for Group That Fights White Supremacy*, Huffington Post, Aug. 15, 2017, http://www.huffingtonpost.com/entry/katharine-gorka-life-after-hate_us_59921356e4b09096429943b6.

previously been critical of the office overseeing Countering Violent Extremism grants for being "more concerned with protecting Muslim communities than with rooting out Islamist extremism and potential terrorists."[4]

14.     In August 2017, the Environmental Protection Agency ("EPA") informed Bay Journal Media, Inc. that EPA was withdrawing funding for a Clean Water Act grant awarded continuously since 1991 to publish the *Bay Journal*, a newspaper covering Chesapeake Bay issues.  At the time, the *Bay Journal* was less than two years in to its most recent six-year grant.

15.     The cancellation of the grant to the *Bay Journal* was followed by reports of centralization of EPA grantmaking processes in the hands of an inexperienced political appointee, John Konkus.[5]  A now-retired career EPA official involved with the *Bay Journal* grant said Mr. Konkus described the *Bay Journal* funding decision as responding to Mr. Konkus' belief that the "American public doesn't trust the press."[6]  The retired EPA official said the funding decision was "totally ideologically driven."[7]

16.     After negative press surrounding the politicization of the *Bay Journal* grant, questioning from U.S. Senators, and various legal actions, EPA restored the *Bay Journal*'s funding in March 2018.[8]

---

[4] Katharine Gorka, *Protecting the Homeland*, Cipher Brief, Jan. 6, 2016, https://counterjihadreport.com/2016/01/07/protecting-the-homeland/.
[5] Juliet Eilperin, *EPA Now Requires Political Aide's Sign-Off for Agency Awards, Grant Applications*, Wash. Post, Sept. 4, 2017, https://www.washingtonpost.com/politics/epa-now-requires-political-aides-sign-off-for-agency-awards-grant-applications/2017/09/04/2fd707a0-88fd-11e7-a94f-3139abce39f5_story.html?utm_term=.15027c10ad4b.
[6] Ariel Wittenberg, *Politics Killed Newspaper Grant—Ex-Bay Program Chief*, E&E News: Greenwire, Jan. 4, 2018, https://www.eenews.net/stories/1060070101.
[7] *Id.*
[8] Dispute Decision Official Decision—Appeal of Bay Journal Media by Kerry K. Neal, Deputy Dir., Off. of Grants and Debarment, EPA (Mar. 1, 2018), *available at* https://www.documentcloud.org/documents/4392842-2018-03-01-Final-BJM-DDO-Decision-W-KKN.html.

17.     In the summer of 2015, the Department of Health and Human Services ("HHS")
awarded various grants under the congressionally-created Teen Pregnancy Prevention Program
for projects seeking to curb teen pregnancies.  In July 2017, HHS informed all 81 grantees under
the Program that it was terminating the Program two years early.

18.     In March 2018, the press reported that political appointees with strictly pro-
abstinence beliefs had driven the process that ended the Program.[9]

19.     Various grantees under the program filed lawsuits to force HHS to reinstate
Program funding, and uniformly prevailed in federal court.

**Changes To The Grantmaking Process At DOI**

20.     Despite the obvious impropriety of politicizing grants, DOI and Secretary of the
Interior Ryan Zinke have followed in the footsteps of DHS, EPA, and HHS by inserting high-
level political review in the grantmaking process.

21.     In August 2017, DOI's Office of Surface Mining Reclamation and Enforcement
cancelled the grant for a study by the National Academy of Sciences, Engineering and Medicine
(the "NAS Grant") concerning potential health risks for people living near surface coal mine
sites in Central Appalachia.[10]

22.     In response to a January 2018 Congressional inquiry concerning the propriety of
the NAS Grant cancellation,[11] DOI's Inspector General investigated the decision to cancel the

---

[9] Heidi Przybyla, *Notes, Emails Reveal Trump Appointees' War to End HHS Teen Pregnancy Program*, NBC News, Mar. 20, 2018, https://www.nbcnews.com/politics/politics-news/notes-emails-reveal-trump-appointees-war-end-hhs-teen-pregnancy-n857686.
[10] Press Release, Nat'l Acad. Sci., Engineering, Med., Statement Regarding National Academies Study on Potential Health Risks of Living in Proximity to Surface Coal Mining Sites in Central Appalachia (Aug. 21, 2017), http://www8.nationalacademies.org/onpinews/newsitem.aspx?RecordID=8212017.
[11] Press Release, Nat. Res. Comm. Democrats, Grijalva Asks Interior Inspector General to Examine Stopped National Academies Studies, Locate Missing Public Funds (Jan. 10, 2018), https://democrats-

grant and concluded that DOI was "unable to provide specific criteria, used for their determination whether to allow or cease certain grants and cooperative agreements," that NAS had "met all contract deliverables to date," and that DOI's decision to cancel the grant meant that prior expenditures on the study were "wasted because no final product was produced."[12] Documents produced by DOI appear to indicate that Katherine MacGregor, the Principal Deputy Assistant Secretary for Land and Minerals Management, personally drove the decision to terminate the study after meeting dozens of times with mining interests.[13]

23.     Also in 2017, Steve Howke was appointed Senior Advisor to the Assistant Secretary for Policy, Management and Budget.

24.     Mr. Howke is a personal friend of Secretary Zinke.  Mr. Howke and Secretary Zinke were kindergarten classmates and played high school football together in Whitefish, MT. Prior to assuming his position at DOI, Mr. Howke worked in the financial industry, beginning his career at the Whitefish Credit Union.  Mr. Howke has no professional experience in public service, public land management, or natural resource policy.

25.     On December 28, 2017, DOI issued the Guidance on its new grantmaking procedures, which contained three broad instructions to leadership within DOI:

naturalresources.house.gov/media/press-releases/grijalva-asks-interior-inspector-general-to-examine-stopped-national-academies-studies-locate-missing-public-funds.
[12] Letter from Mary L. Kendall, Deputy Inspector Gen., DOI, to Raul M. Grijalva, Ranking Member, Comm. Nat. Res., H.R. (June 7, 2018), http://democrats-naturalresources.house.gov/imo/media/doc/DOI%20IG%20Letter%20on%20Cancellation%20of%20NAS%20Mountaintop%20Removal%20Mining%20Study%20June%207%202018.pdf.
[13] Jimmy Tobias, *A Top DOI Official Had at Least Six Meetings with the Mining Industry. She Then Helped Cancel a Study on the Public-Health Effects of Mining.*, Pacific Standard, June 11, 2018, https://psmag.com/environment/a-top-doi-official-had-at-least-six-meetings-with-the-mining-industry-she-then-helped-cancel-a-study-on-the-public-health-effects-of-mining.

a. DOI's bureaus were directed to catalog and submit the financial assistance programs (grants and cooperative agreements) active at the time;

b. DOI's bureaus were instructed that all financial assistance programs were to support the Secretary of Interior's Top Ten Priorities, attached to the Guidance as an Attachment.  DOI's assistant secretaries and bureau directors were instructed to work with Mr. Howke to "set expectations and to develop a plan for program execution" for all financial assistance programs.[14]

c. DOI instituted a new grant approval process, which requires Mr. Howke to review all grants to non-profit organizations, all grants to higher education institutions, and all grants used to acquire land or an interest in land, if they exceeded $50,000. Mr. Howke is also required under the Guidance to review all other grants with an award ceiling exceeding $250,000.  The grant approval instructions noted that any grant or cooperative agreement of any amount "may be subject to an after-the-fact review process to ascertain whether the funds were appropriately expended and whether the anticipated benefits were produced."[15]

26.     In bold and italicized text, the Guidance threatens DOI employees who do not follow the document with "greater scrutiny,"[16] a particularly ominous warning given Secretary Zinke's apparent willingness to arbitrarily transfer or force out career staffers.[17]

---

[14] Memorandum from Scott J. Cameron, Principal Deputy Sec'y Pol'y, Mgmt., Budget, DOI (Dec. 28, 2017), available at https://assets.documentcloud.org/documents/4344915/Interior-guidance-for-fiscal-2018-grants.pdf.
[15] *Id.*
[16] *Id.*
[17] *See* Dino Grandoni, *Investigators: Interior's Poor Record-Keeping Makes It Impossible to Tell Whether Mass Employee Transfer Was Legal*, Wash. Post, Apr. 11, 2018, https://www.washingtonpost.com/news/energy-environment/wp/2018/04/11/watchdog-office-interiors-poor-record-keeping-makes-it-impossible-to-tell-if-controversial-personnel-moves-were-legal/?utm_term=.bf4ba15bed8a; Darryl Fears, *Yellowstone's Top Official, Facing Reassignment Under Trump, Is Denied Option to Retire on His Terms*, Wash. Post, June 7, 2018,

27.     It was reported in June 2018 that the Chicago Botanic Garden saw its DOI funding for work on the National Seed Strategy "cut off, without explanation."[18]  The same report suggested that while other organizations had been affected by DOI's change in grantmaking procedures, many were not "willing to speak on the record about what they [saw] as Interior's motivations, citing fears of political retribution."[19]

### Plaintiff's FOIA Request

28.     To understand and explain to the public the process by which DOI is selecting, revoking, and reviewing grants awarded by the agency pursuant to its new politically-driven process, Plaintiff filed a FOIA request on June 6, 2018.

29.     The FOIA request, attached here as Exhibit A, requested various documents related to DOI's new grants process, including grant plans sent or received by Mr. Howke, grant materials reviewed by Mr. Howke, documents revealing grant decisions made by Mr. Howke and his staff, and documents sent or received by Mr. Howke containing certain keywords.  The FOIA request sought documents generated after the institution of the new process described in the Guidance.

30.     Plaintiff sought a waiver of search and duplicating fees under 5 U.S.C. § 552(a)(4)(A)(iii), which requires waiver of fees if the disclosure is "in the public interest because it is likely to contribute significantly to public understanding of the operations or activities of the government and is not primarily in the commercial interest of the requester."

---

https://www.washingtonpost.com/news/energy-environment/wp/2018/06/07/yellowstones-top-official-facing-reassignment-under-trump-is-denied-option-to-retire-on-his-terms/?utm_term=.a39987b90b50.

[18] Alexander Nazaryan, *Sage Grousing: Senators Charge Interior Is Holding Up Conservation Grants*, Yahoo, June 12, 2018, https://www.yahoo.com/news/sage-grousing-senators-charge-interior-holding-conservation-grants-100013577.html.

[19] *Id.*

31.     On June 26, 2018, Defendant sent Plaintiff an acknowledgement that it had received the FOIA Request, and assigned it control number OS-2018-01255.  DOI informed Plaintiff that it was "in the process of determining" whether to grant Plaintiff's request for a waiver of search and processing fees, and that Defendant was taking a ten-workday extension for processing the Request under 43 C.F.R. § 2.19 due to the need to consult with multiple DOI bureaus.  To date, this June 26, 2018 acknowledgement letter was the last communication from Defendant to Plaintiff.

32.     Pursuant to 5 U.S.C. § 552(a)(6)(A)(i), Defendant was required to determine whether to comply with the FOIA request within twenty business days of receipt of the request and to notify plaintiff immediately of its determination, the reasons therefor, and the right to appeal any adverse determination.

33.     As of the date of this complaint, Defendant has failed to: (1) determine whether to comply with the FOIA request, (2) notify Plaintiff of any such determination of the reasons therefor, (3) advise Plaintiff of the right to appeal any adverse determination, or (4) produce the requested records or otherwise demonstrate that the requested records are exempt from production.

34.     Because Defendant has failed to comply with the time limits set forth in 5 U.S.C. § 552(a)(6)(A)(i) and 5 U.S.C. § 552(a)(6)(B)(i), Plaintiff is deemed to have exhausted any and all administrative remedies pursuant to 5 U.S.C. § 552(a)(6)(C)(i).

## CLAIM FOR RELIEF

35.     Plaintiff incorporates by reference the foregoing paragraphs as if fully set forth herein.

36.     By failing to respond to Plaintiff's request within the statutorily mandated twenty days, Defendant has violated its duties under 5 USC § 552, including but not limited to the duties to conduct a reasonable search for responsive records, to take reasonable steps to release all nonexempt information, and not to withhold responsive records.

WHEREFORE, Plaintiff prays that this Court:

1. order Defendant to conduct a search for any and all responsive records to Plaintiff's FOIA requests using search methods reasonably likely to lead to discovery of all responsive records;

2. order Defendant to produce, by a date certain, any and all non-exempt responsive records and a *Vaughn* index of any responsive records withheld under a claim of exemption;

3. enjoin Defendant from continuing to withhold any and all non-exempt responsive records;

4. order Defendant to grant Plaintiff's request for a fee waiver;

5. award Plaintiff its costs, attorneys' fees, and other disbursements for this action; and

6. grant any other relief this Court deems appropriate.


Dated: August 9, 2018                              Respectfully submitted,

                                                   */s/ Javier M. Guzman*
                                                   Javier M. Guzman (D.C. Bar No. 462679)
                                                   Travis Annatoyn* (*pro hac vice* motion
                                                   forthcoming)

Democracy Forward Foundation
P.O. Box 34553
Washington, DC 20043
(202) 448-9090
jguzman@democracyforward.org
tannatoyn@democracyforward.org

* Admitted in New York; practicing under the
supervision of members of the D.C. Bar while
D.C. Bar application is pending.